BEAUFORD H. BUSH, APPELLANT, v. SPENCER G. GRIFFIN, ET AL., APPELLEES.

FILED MARCH 22, 1906.   No. 14,141.

1. Adverse Possession: EVIDENCE.   While the fact that one claiming title by adverse possession failed to pay taxes on the land during his occupancy would not of itself necessarily defeat his claim, it is entitled to weight as tending to show that he did not intend to claim title as against the rightful owner.

2. ——: ——.   Where such occupant entered originally without color of title or claim of right, and the acts relied on to show entry and occupation were consistent with a mere intention to trespass from time to time until interfered with by the true owner, his testimony that he intended to take possession and hold and occupy as owner, uncorroborated by acts necessarily indicating such intention, is not sufficient to require a finding in his favor.   *Knight v. Denman*, 64 Neb. 814.

3. **Evidence** examined, and *held* to bring the case within the foregoing rule.

APPEAL from the district court for Hayes county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*C. A. Ready, F. I. Foss* and *R. D. Brown,* for appellant.

*W. S. Morlan, contra.*

ALBERT, C.

This suit was brought in March, 1903, to quiet the title to a quarter section of land in Hayes county, the plaintiff claiming title by adverse possession, the defendants tracing their title to a patent from the government. It appears in the evidence that the plaintiff settled near this land in 1886. At that time the land in question, as well as most of the land in that vicinity, was wild, a part of the public domain and open to settlement. Between that time and 1890 the plaintiff built and extended his fences so as to include a portion of the quarter section in dispute and other lands to which he had no title with his own. In 1889 one Marshall preempted this quarter section, and the following year proved up, made a loan on the land and left the country. The plaintiff afterwards, in the same year, extended his fences so as to include the entire tract, and has ever since been in possession using it in connection with other lands for grazing purposes. The plaintiff continued to extend the boundaries of his ranch, paying little or no attention to titles, so that at present it consists of almost 3,000 acres, of which the plaintiff can show paper title to less than 700 acres. The remainder belongs mostly to non-residents; a portion of it, however, is still government land. The loan made to Marshall was foreclosed and the land sold in pursuance of the decree, and the sheriff's deed based on such sale, and under which the defendants claim title, was executed on the 14th day of November, 1892. The plaintiff was not a party to the foreclosure suit.

With the exception of one year, 1902, the plaintiff paid no taxes on the land. He took possession under no claim of right. As we have seen, he was in possession of a portion of the land when Marshall preempted it. The record shows that he recognized Marshall's right to preempt the land, as well as Marshall's title acquired by virtue of the preemption. At the time he extended his fence so as to take in the whole tract, which was after Marshall had left, he made no claim to the land. His examination at this point is, in part, as follows: "Q. After Marshall (the man who preempted the land) proved up and went away you put the whole fence around the quarter, did you? A. I moved the fence out of the cañon, and moved it on the line (taking in the whole tract). Q. And took it inside of your ranch. Just before Marshall went away did you say anything to him about fencing this land in? A. No, I never asked him anything about fencing it. Q. Never asked him anything about it? A. Never did. Q. When you fenced it in what title did you claim at that time? A. I didn't claim any title. Just fenced it in. Q. When you fenced it in you didn't claim any title? A. No, sir. Q. When was it you did claim title to it? A. I have been claiming it as my pasture ever since I fenced it. Q. You didn't claim any title to it when you fenced it? A. Not before I fenced it, but after I *fenced* it I did. Q. By what right did you claim it at that time? A. Well, adverse. Q. What right did you claim to have to it? A. I didn't claim I had any right at all, only I just fenced it. Q. The facts are Marshall went away, and there was nobody living there, and you thought you would fence it in? A. That is it. Q. And you kept it fenced ever since? A. Yes, sir. Q. You never paid anybody anything for it? A. I never paid anything only some taxes."

From the evidence just quoted, taken in connection with the facts hereinbefore stated, it seems clear to us that the purpose of the plaintiff in taking possession of the land was not to hold it as against the rightful owner, but merely

to use it, as he was using other lands in which he had no claim or color of title, as long as he could without interference from the owner. We have seen that he inclosed and used government land in the same way. He certainly asserted no claim or title to such lands, but stood ready to surrender possession to any one claiming under the government, just as he surrendered that portion of the land in question which he had previously inclosed to Marshall, when the latter preempted it in 1889.

Another thing that inclines us to this view is that for more than ten years after taking possesion of the land he paid no taxes. While that fact of itself would not defeat his claim of title by adverse possession, still it is of weight as tending to show that he did not intend to claim title as against the rightful owner. As was said in *Todd v. Weed*, 84 Minn. 4:

"The land, being a government subdivision, was presumably taxed separately from other lands, but defendant never paid the same. On the contrary, they were annually paid by plaintiff or his predecessor in title. The failure to pay taxes is, of course, not conclusive against the person claiming title by adverse possession. But such failure, where the land is assessed separately, is strong and forcible evidence that the possessor did not intend to claim title adversely to the owner.   *   *   *   If the payment of taxes tends to show an intention to claim title—and clearly it does—the failure to pay them would *a fortiori* tend to show the converse of the proposition."

It appearing, then, that the plaintiff took and retained possession without any claim of right or color of title, and with no intention of holding it as against the owner, but merely to use it for his own purposes as long as he could, the case falls within the rule announced in *Knight v. Denman*, 64 Neb. 814:

"Where such occupant entered originally without color of title or claim of right, and the acts relied on to show entry and occupation were consistent with a mere intention to trespass from time to time until interfered with by

the true owner, his testimony that he intended to take possession and hold and occupy as owner, uncorroborated by acts necessarily indicating such intentions, is not sufficient to require a finding in his favor."

The opinion from which the foregoing is taken is by Commissioner POUND, and contains not only an exhaustive review of the authorities on the question under consideration, but clear and cogent reasoning in support of the rule stated. The plaintiff, however, insists that the facts in that case are, in many respects, different from those in the case at bar. They are; and it may be said that two cases seldom involve precisely the same state of facts. But that does not destroy the value of the former as a precedent as long as they have enough facts in common to furnish the essential elements of some rule announced in the one and invoked in the other. The facts in this case cover every essential element of that rule and bring the case, it seems to us, squarely within it. The decree seems to be fully justified by the record, and it is recommended that it be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.